I'll now take up the last case of the morning that, as far as I'm concerned, is a run-through procedure, but y'all may prove me wrong. So, Ms. Misko. Good morning, Your Honors. May it please the Court, Megan Misko on behalf of L. Woodley in this matter. I would, if the Court prefers, I'd like to address the Rule 56 question that was put to us in the May 22nd letter. Yeah, I can't. To me, that's the issue, but, you know, again, y'all may prove me wrong, but... Well, that's what I plan on focusing on this morning. So, under Rule 56, the way that it reads now, as of 2010, the party who is moving for or opposing summary judgment needs to support their assertions by, and then at that point, under 56C1A, Congress lists a lot of items, and it's non-exclusive lists, and it says depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials. And it's that last item that I think gives a very broad listing of all the possible information that can be placed into the record to support or oppose a motion for summary judgment. If you compare this to the old Rule 56 that was in effect before 2010, it relied heavily on the use of affidavits to support or oppose summary judgment, and then also said you could use pleading, discovery, and disclosure materials. This is a much more comprehensive listing of things that you could put into the record to support or oppose summary judgment. And I would argue that the other material, that last little phrase in Rule 56C1A, really could encompass expert reports. If a restricted list of items was contemplated, it wasn't really written into the rule. I think if you want to see a restrictive list of items, in Louisiana, they recently redid Article 966, which governs motions for summary judgment, and their code article, it says only, quote, only documents that can be filed into the record, and it's a very restrictive list. And it says pleadings, memos, affidavits, depositions. It goes on to certified medical records, written stipulations, and admissions. And we know, you know, if you go into a court over there and you try to put something in that isn't specifically stated, that's no longer workable in Louisiana. You don't have that in the Federal Code of Civil Procedure. The Rules of Civil Procedure, I'm sorry. The other thing that I think is, that needs to be looked at in connection with Rule 56, is Rule 26, and how an expert report needs to be prepared and the information that needs to be provided in an expert report in order for it to be admissible in court anyways. This is... Well, to me, the question isn't so much whether, if you went to trial, you could proffer the expert report and get it admitted, but whether the expert report embodies information that you can, at trial, present it in admissible form. And you have argued, well, Captain Jameson, I believe, Captain Jameson can testify to this. I mean, he signed this report. He didn't swear to it, but he signed it, and he can come in and testify to what's in this, and that's how it would be presented in admissible form. And that issue wasn't really litigated because, frankly, it looks like everybody was applying pre-2010 Rule 56. I mean, the citations and everything, there's no other way to understand this district court opinion but that the wrong book was on the shelf, if you will, and was being used. So I think you can debate, can it be presented in admissible form? Well, we're going to bring Captain Jameson to trial. You're not just going to show up with this report at trial. You can show up with him. Certainly. He's going to testify to what's in the report, and that's really all the rule contemplates. Is that what you're basically presenting here? That is, Your Honor, and I think if you look at the Southern District of Texas' ruling in the Valentine v. Hodnick case, it's not an expert report, but it's a police report, and in that case, you know, they used the police report to support their motion for summary judgment. The defendant objected, or the plaintiff objected. The trial court said, you know, yeah, this is in itself, this report's not coming in at trial. But we know it's probably, it's very likely going to be authenticated by either an affidavit or the live testimony of the officer who wrote it, so we'll consider it in support of this motion for summary judgment. And I think if you look a lot of times at, just on a practical matter, when you do put in an expert report with the declaration or the affidavit, many times that I've seen in the Eastern District, it's a one-page, my name is Captain Jamison, I wrote the report at Exhibit A, this is what I would say at trial, my CV and my credentials are attached to Exhibit B, and that's it. It's just a one-page thing that he's already signed this report. That's what he's going to say. Well, I mean, counsel opposite will likely say, you know, there is a difference between something that's sworn and something that's unsworn, and we can certainly debate that. I guess the question to me is, why wasn't this discussed in the district court in so many words? I think you did keep saying, or the briefing kept saying, we'll present him at trial, we'll present him at trial. So I think the argument was made, but it wasn't made quite this way. So, I mean, why wasn't it? Well, the issue on OLT's objection to the expert report came, if you just look at the timeline in the scheduling order, the motion submission date was July 27th, and the reply was filed on August 4th, August 3rd, it was put in the record. And so by that point, we didn't file a SIR reply, it's past the submission deadline. So you didn't think you could come in and file an affidavit or do anything that might have altered the course of the trajectory there? No, and I think at that point we were probably three weeks from trial and getting ready for everything else, and so we have the pretrial order, pretrial conference coming up in the next couple of weeks, so we didn't file a SIR reply or a declaration or a SIR reply saying this isn't really necessary anymore, and then we get the ruling and just all it is is a one or two-sentence statement saying this is an admissible and citing to the Provident case, which relies on the 1997 Moore's project. But you also could ask for reconsideration there. I mean, there were a lot of things that were a much more efficient process. Look where we are now in 2017. Okay, it is what it is. For future reference, I have seen lawyers nonetheless move for leave and say, I can fix this, that this problem that they raised, and whatever. But we are where we are. So the next question that I have, which to me is equally important to the Rule 56 question, and that is if we were to vacate because the wrong version of the rule was applied, have you only won the battle and you're still going to lose the war? Because when you go back, the counsel opposite is going to say, well, Jameson didn't qualify to testify to this. His report doesn't support X, Y, and Z anyway, even if we consider it, and so on and so forth. So if you would address that, like can you still get to trial with Jameson if we remand for consideration of Jameson's report? I think so, because what we would also argue is that the deadline to file the motion for summary judgment was the exact same deadline to file a motion to exclude or limit his testimony. And there was no motion filed to do so. The first arguments about Captain Jameson's qualifications, his abilities to testify on offshore supply vessels versus river tugs, that was first addressed in the reply brief for this motion for summary judgment. So our position would be if this is remanded, they shouldn't get a second bite at the apple. On the scheduling order, you could have filed a motion to exclude him. You didn't. This is where it is. And at this point, you would be limited to questioning his basis at trial or not through a motion for summary judgment in supporter or reply brief, because at that point in the MSJ, I think the district court is limited to not weighing the evidence or determining the credibility. It's just does he say this, does it create a fact enough that it presents enough for trial, and then we go to trial and OLT is free to question Captain Jameson about his abilities to render these opinions in front of the jury. Well, okay, I guess if we're sort of resetting the dial here, if we say let's have a do-over because everybody was using the wrong rule and that doesn't seem right, so let's just send it back and have a do-over. Then in the do-over, the argument instead of being, well, there was no affidavit, is it can't be presented in admissible form. Do you not think that would also encompass whether Captain Jameson should be allowed to testify at all? I think that is something that is limited to a different motion. I think that that is a motion that is separate, and that is a Daubert motion. That's something that's going to be addressed during a different matter. I don't think that is appropriate to bring up in a motion for summary judgment because, again, that just goes into weighing the evidence and the credibility. But typically when a case gets remanded, I mean the district court has discretion. It's going to decide when to set trial. It can set new motion deadlines. I mean doesn't it have all kinds of discretion to determine its schedule? It certainly does, but we would. . . And if she wanted to say I'll allow for Daubert challenge, I mean she could allow more discovery. She can do what she wants basically if it ends up back in her court. She can. She can. I mean we would certainly strongly argue in a scheduling conference that, listen, this thing was ready to go to trial three weeks before, and the only thing that needs to be done is updated medical depositions. But she can do whatever she wants. She is the district court judge. All right. So let's assume that you can't, that the Daubert challenge is time for that to pass, can't make it, whatever. Does Captain Jameson's report get you to the jury? I think it certainly does. Tell us how. I think it gets us there by both showing an issue of fact on the breach of the duty under the Jones Act because one of the important things is this is a Jones Act case. Even if you guys think this is a marginal case, those are left for jury determinations because it's a featherweight causation standard. I think we've got the breach of duty under the Jones Act, the duty to provide a safe place to work. Captain Jameson says there was no non-SKID on this wooden deck of the vessel. You can see it in the photographs and the record. That's not appropriate. It makes it an unsafe place to work, in my opinion, in my expertise, in my experience. And then he testifies he slipped. Because there was no non-SKID, that very likely could have caused the reason for his fall. So I think that gets you both breach and causation, testimony, enough to get you to the jury because, again, it's a Jones Act case. It may not get you to the jury with the unseaworthiness, but Jones Act, I think it does. Well, we just had the case of Austin v. Kroger, like the third iteration of that case that we just granted in order to publish it. And it's a Texas non-subscriber workers' comp. It's not a Jones Act, but it has to do with this question of whether they gave him the necessary instrumentalities to do his job and, failing which, this guy spilled. Even though he knew there was goo on the floor, he still spilled in it, and we sent it back. There's a little procedural part of that, but we did send it back and considered that there was at least some evidence about this spill magic and all of that. So, I mean, it kind of sounds similar to what you're arguing here. Yeah. I mean, what it is is their contention is it wasn't necessary. You read the brief. He can't say with certainty. We don't think he needs to say with certainty. It's not fatal to his claim. And then when you get Captain Jameson on top of that, I think it at least gives more than enough for a jury to say, okay, well, listen, if there's not non-skid, that can create an unsafe work environment. That's probably why he slipped, and fine in his favor. I mean, all safety features can nonetheless be defeated. I mean, there's no perfect world. What you're saying is the safety feature would have made it less likely, and you not have a reasonable doubt burden. You have a promise of the evidence burden. You just want your shot at the jury convincing him that. All right. 51%. Do you have other questions? I think we have your argument. Thank you very much. Good morning. Bill Schwartz representing Offshore Logistical. I guess first I should address our procedural issue because it seems to be weighing on the court. I'm a procedure kind of gal. I'm all with you, Judge. Okay, so tell me why it is that everybody followed an old rule. Well, I cited to an old Fifth Circuit case because I couldn't find another Fifth Circuit case that was more recent. So that's not citing an old rule. No, but the district judge clearly is citing the old version of the rule. It doesn't make sense otherwise. Okay. If I might, you know, the cases that the court gave us to look at, in looking at that, the court said that counsel could have come in and done some things to make the report of Captain Jameson evidence that they would consider. That was never done here, as the court has pointed out. So opposing counsel wants to say I did that in my reply brief. Actually, in my reply memo at trial, I actually did it in the motion for summary judgment. I raised that issue. And their response was Captain Jameson, Captain Jameson, Captain Jameson, Captain Jameson. I think if this court wants to make a procedural precedent on Rule 56 and make a point, unfortunately, I don't think this is the case to do it in. What I want to do is resolve the case correctly under the proper rules. I don't have some ambition to write the definitive work on civil procedure, if that's your insinuation. No, it's not my insinuation, but what I am suggesting to this court is any expert who is going to testify, any expert who is going to write a report has to base it on the facts of the case. And the one thing that I haven't heard mentioned in this courtroom yet in the discussion with opposing counsel and in the discussion about this appeal is where's Captain Lee? Captain Lee has testified under oath, and bear with me if you don't mind, because I think this is very important, in the statement of uncontested material facts and the attached deposition of Captain Lee, the plaintiff. I'm a licensed master. I was one of the first employees hired by the company. I was there to get the boat ready for its certificate of inspection. It was operated under its certificate of inspection under me. It was my job. He admits this. It was my job to maintain the vessel and keep it seaworthy. I was a senior captain. I brought my son on board this vessel during this job offshore, my 9-, 10-year-old son. I walked the deck five to seven times and circled the deck. The questions were asked of him, what were you doing? I was making sure that the deck was kept up. It all falls on me. Was there anything wrong with the equipment or loading on the deck? No. Was there any reason you had concern about your son walking around the deck? No. Did you see anything that gave you any concern about the ability to walk the deck five to seven times? No. Was there anything wrong with your shoes? No. Did your son have any problem walking the deck? No. Do you know of any action by any other crew member that could have caused your knee to buckle? No. Were you in any hurry? No. Do you know why your knee buckled? No. I don't know. Were the deck boards painted with non-skid? No. Did you expect them to be painted with non-skid? No. What are you telling us that caused you to be hurt on July 20th? I don't have a clue. Now, are we going to go by our testimony? It's not testimony of Captain Jameson. Captain Jameson is bought and paid for. He's an expert who comes in and— That's true of all experts, and it's not uncommon for a plaintiff to not know the source of their injury, the cause of their injury, and hire an expert who says this, that, or the other. I mean, that's not that uncommon. It's not uncommon to buy the reason for the injury? Well— That's what they're doing. Okay. They are standing before this court with all due deference and saying, forget about everything that the captain and the plaintiff has testified under oath. We've got somebody. No, the question is, it seems to me if Captain Lee's own admissions were enough to defeat this case, that's what the district judge would have rested her opinion on. No. She rested it on the absence of a sworn Captain Jameson. May I read from the orders and reasons? Okay. Plaintiff testified at his deposition he does not know what caused the accident. Plaintiff cannot identify any act of negligence or breach of duty by defendant that caused his injury. Yes, but then she says plaintiff attempts on page 7 to satisfy his burden regarding causation by pointing to the expert report, however, it is not accompanied by a sworn affidavit. End of discussion. Not, it doesn't matter whether he has an expert or not, his admissions are enough. So, I mean, I realize you can still argue that as a matter of law the admissions are enough, but that's not what the district judge ruled upon. Plaintiff has to point to sufficient evidence in the record. What is Captain Jameson's testimony going to be based upon? Can he just take it out of the air and speculate and give conjecture? Well, and you can say that he, if he didn't inspect the boat, he didn't talk to the plaintiff. He's, it's inadmissible in a DABRA hearing. I mean, that happens all the time. But the problem is that's not the ruling at this point. Judge, in my report. I mean, I share your concern. I mean, he says the expert report says non-skid paint in all walk areas will prevent incidents like Lee's. Not even what plaintiff's counsel was saying, contributing factor, could it prevent. I mean, I don't know how you can say 100 percent it will prevent this incident when you weren't there at the time. I don't think he's even inspected the boat since. But to me, that goes to, I mean, that happens all the time in DABRA hearings. That type of foundational challenge and reliability challenge is raised all the time. Judge, I did cite in my reply memo to the court at the trial level, I said, if you're going to consider Captain Jameson, and I went through his report in the record from page 233 to page 263, I addressed every single line and word of what he said and what was the basis for those opinions. I would suggest to you that the court looked at the only real evidence that was before it, the captain's testimony, the plaintiff's testimony, and she said, this doesn't reach the level of negligence. This doesn't reach the level of unseaworthiness. I have nothing here to support this expert. But the nothing was because it was unsworn. That was the only reason given. And so to me, I am not going to prejudge a DABRA hearing that may or may not occur in this case. There's a lot of discretion vested in the district court in DABRA matters. There is obviously parameters to the discretion, but I don't think it's appropriate for an appellate court in the first instance to conduct a DABRA hearing in oral argument. So to me, the question is, was the error of relying on old Rule 56 sufficiently infecting the process here that we should send it for a do-over, at which you can make the arguments she makes, you can make the arguments she's making, and that's why I said you may win the battle and lose the war, and that may be the case. I just think it's a little premature for us to decide the DABRA challenge at this point that may or may not be allowed to be made, given the timing. Well, with all due respect, and I understand where the court's coming from on the procedural rule, there has to be some factual support for the conclusions that want to be reached. And I think this judge not only had it in our memorandum at trial, but she went through it over eight pages, nine pages of her order and reasons why she was relying on the plaintiff himself in reaching the conclusion she reached. I mean, you make a very passionate argument. It seems to me you're ready to go to trial and show why you think this is a ridiculous case the plaintiff's bringing. And I tried a lot of these Jones Act cases in Galveston. Some of them involved this whole non-skid theory, the exact one being made here. And if all they've got is the plaintiff saying, I don't have any idea what happened, and then this one, quote, expert coming in saying it must have been the non-skid, even though I wasn't there. I mean, from what I saw, you've got a very good chance of winning that. I mean, I wonder this in a lot of cases, but it's a one- or two-day trial. Why don't you just go try? I mean, now you're in the Fifth Circuit. You might have to go back. It's taking years. I mean, it's just more a comment than a question. But I just often wonder why in cases when you obviously think you have a great defense and I see some of what you're saying, you don't just try. I mean, how many days would this take to try? Two at most? Two to three, Judge. But I didn't. Number one, I filed a motion for summary judgment. I won. They filed an appeal. But you know there's going to be an appeal. It's really more a comment. Okay. I just often wonder why the more efficient task isn't to go to trial and then it's over and done with. I'm just, again, going to point out at the very end, after Captain Lee, not Captain Jameson, after Captain Lee had testified under oath that he could not identify what happened or why he hurt himself that day, Ms. Misko asked him some questions and basically for the first time put out the word, did you slip, or you slipped on the deck, where did you slip on the deck? He didn't testify to that. But I came back, and at page 160 of the record on appeal, the questions were asked as follows. What prevented you as captain on that boat from putting nonskid on the deck boards? Answer, nothing. Well, why are you saying that you slipped because there wasn't any nonskid? His answer, I'm not saying I did or I didn't. I'm saying I don't have a clue. This court has given multiple decisions where it says speculation and conjecture cannot support a decision. And if we ignore the testimony of Captain Lee and then say, well, Judge Morgan should have considered Captain Jamison because, you know, he's this expert over here. Captain Jamison has to be put in context of Captain Lee. This guy's walking the deck five to seven times with his son and says, I cannot point to one thing that's not right with this deck or with this vessel. I can point to nothing any other crew member has done to me. But that's not going to be definitive. I mean, take another hypothetical. There's another person on the vessel who sees what happens. And so the plaintiff says, you know, I don't know. I just ended up on the ground. And the other person says, well, no, I saw he walked on this area where, you know, there was some oils I saw there. That would be sufficient. It doesn't exist, Judge, not in this case. Right, but your argument seems to be that if the plaintiff doesn't know what happened, end of case, it's over. And I'm saying there can be other witnesses who can provide that causal link. That's the point I'm making. They could have presented that in opposition to the summary judgment. Well, they presented it in the form of an expert, and the question is whether that expert's reliable and sufficient. But that, then, is the question, not, well, here's this plaintiff who knows nothing about what. I mean, they're not relying on the plaintiff to get past summary judgment. The sole question is, is the expert's statement admissible, reliable, sufficient, for summary judgment purposes? And what they're doing is ignoring the fact that the only evidence in the case is their captain's testimony about what happened out there. That is truly the only evidence in the case. There's no other witness that's going to come in and refute what he had to say. We don't have to refute what he had to say. Well, to my point, try the case. It would be a lot less expensive than filing dauber motions and summary judgments and traveling to Houston for a Fifth Circuit argument. I mean, anyway. I did not ask for the case to be refuted. Okay, I understand totally why you're trying to defend a win in the district court. We're not faulting you for that. What we're saying is practically a lot of this stuff kind of ends up. My mom always, funnily enough, when I was a kid, said, don't make a failed federal case out of it. Well, here we are, right? And we kind of have gotten a bit far afield from kind of what's what. But, again, I don't fault you for being here defending the case. I do think it ought to be determined under the proper current rules of civil procedure, and so that's what led to the letter to you all, et cetera, et cetera. I appreciate that. And all I would suggest to the court is in reading Judge Morgan's ruling, she spent quite a bit of time, nine pages, in going over why she reached the conclusion she did. Certainly she did make the statement that she was not considering Captain Jameson. And I think if you read Captain Jameson's report, this is Captain Jameson. He's talking about the medical doctors can't do this, and he's talking about an operations manual can't do this. And somewhere in there of his four opinions, he kind of said, oh, nonskid should have been on the deck too. And he's substituting what he has to say, that it can cause that. Yes, it can cause that. He's substituting his opinion for the facts in the case. Well, I mean, you can look at our Austin v. Kroger decision, which has to do with the spill magic, and it's an expert. There's a hiccup there about the timing of presenting the expert that has to go back to the district court, so I don't want to prejudge that. But I will just say that it is kind of a similar thing. This guy knew there was a sticky substance on the floor. It's a Texas non-subscriber. It's not a Jones Act. But he knew there was a sticky substance on the floor. He's trying to clean it up. He's not given, in his view or in the argument of the expert, the proper equipment to do it, i.e., this spill magic stuff. And he ends up spilling on sticky stuff he knows is there. And that case is still alive after a trip to the Texas Supreme Court on a referral, on a certified question, and I think two or three appeals to our court. So stuff happens. And without having read the Austin case, I cannot believe that the expert failed to rely on some of the testimony in the case. I'm sure he did. Captain Jameson doesn't mention Mr. Lee's testimony at all. Yeah, but see, this to me sounds like a pretty decent Daubert argument. Your counsel opposite is saying you missed the Daubert deadline. I don't know. Will that be reinstated and whatever? But, again, I definitely know that we aren't the place to decide an original Daubert challenge that hasn't yet been ruled upon by the district court. Well, I respectfully disagree with the court. I don't think this is a Daubert issue. I think Captain Jameson could probably get over the hurdle of having the experience, the qualifications to be able to testify. At trial, I certainly believe his testimony would be limited, and like you have said. But you can bring a Daubert challenge not just on qualifications but because what he's saying is not reliable because he didn't talk to the witnesses, he didn't inspect the boat. I'm not saying you'd win or not, but those challenges happen all the time, that it's just sheer speculation not founded on any evidence. Speculation, conjecture, yes, you're right. But, again, I suggest to this court if you read through his report, he doesn't reference Captain Lee at all. Counsel, let me. This is very interesting. But this is not the judgment that's on appeal. Yes, sir. I thought the judgment was on appeal when Captain Lee moved to dismiss the claim for maintenance and cure. Yes, sir. And so your client agreed to pay injury, and then the court entered judgment. I didn't think that a summary judgment was what you're arguing about the error of the judge, but that's not the judgment. The judgment was after he moved to dismiss the claim for maintenance and cure, and the parties, in effect, settled. No, sir, we did not settle. I paid maintenance and cure. That's a very, very friendly question, and that's the answer I accept. Yes, sir, we did not resolve the case. We paid the maintenance and cure, so they dismissed their case voluntarily. So the case before the court was only the motion for summary. Negligence and unseating. Negligence and unseating. The final judgment was the summary judgment. Yes, sir. Thank you. Yes, sir. All right, anything else? No, ma'am. Thank you. Unless you have questions. Appreciate it. Appreciate it very much. All right. Rebuttal? Only if the court has any additional questions. I think that counsel's argument about it's only Captain Lee, whatever he said, I don't think a plaintiff's testimony is the end-all, be-all of a summary judgment. Well, it's a problem for you at trial, but I'm not here to give advice to either side about how to try the case. I've sat through a good many such trials as a state district judge. It wasn't Jones Act, but similar kind of stuff where it was a little light, the evidence, but we let the jury rule and they did. And that's really just my only point. I've tried plenty of Jones Act cases where it's an unwitnessed slip and fall, but try the case and see what the judge does and the jury does. I guess featherweight causation has to mean something. That is our underlying argument, Your Honor, is in summary judgment in Jones Act is just not really as strong as in other cases. So thank you. All right. Well, appreciate both sides. And the case is under submission.